**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JMR CAPITAL HOLDINGS, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MDR UNITED, LLC, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-18583<br><br>**OPINION**<br><br>August 31, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Mighty Dog Roofing United, LLC ("MDR"), Josh Skolnick ("Skolnick"), Turp Ricketts ("Ricketts"), Brandon Zurek ("Zurek"), Chris Phalen ("Phalen"), Luke Schwartz ("Schwartz"), and Joshua Hoffmann's ("Hoffmann") (collectively, "Defendants") Motion to Transfer Venue, or in the alternative, Motion to Dismiss the Complaint filed by Plaintiffs JMR Capital Holdings, Inc. ("JMR"), MSG Contracting, Corp. ("MSG"), Scale Beyond, LLC ("Scale"), and On Top Roofing, Corp. ("On Top Roofing") (collectively, "Plaintiffs"). (ECF 9, "Motion" or "Mot.") Plaintiffs opposed the Motion. (ECF 22, "Opposition" or "Opp.") Defendants filed a reply. (ECF 24, "Reply.") Defendants subsequently filed a Motion for Leave to File Supplemental Authority in support of its Motion to Dismiss. (ECF 26.) The Court has decided the Motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Transfer Venue is **GRANTED**, and

Defendants' Motion to Dismiss and Motion for Leave to File Supplemental Authority are **DISMISSED** as moot.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

This matter arises out of various franchise agreements made between Plaintiffs and Defendants. Plaintiffs are an assortment of New Jersey corporations and limited liability companies that entered into Franchise Agreements with Defendants to operate roofing businesses. (Compl. ¶¶ 2-5.) Defendant MDR is a Pennsylvania limited liability company that maintains its principal place of business in Nebraska. (*Id.* ¶ 6.) Defendant Hoffman is a senior MDR executive and a citizen of Illinois. (*Id.* ¶ 7.) Defendants Zurek, Skolnick, Schwartz, Ricketts, and Phalen are agents of MDR and citizens of Nebraska. (*Id.* ¶¶ 8-12, 15.)

Plaintiffs allege that they learned about and became interested in investing in the Mighty Dog Roofing franchise system from 2021 to 2022. (*Id.* ¶ 28.) According to Plaintiffs, Defendants fraudulently induced them to invest in the franchise system by disseminating falsified financial performance figures and fabricating a proprietary business model in violation of the FTC Franchise Rule. (*Id.* ¶¶ 17, 30-54.) Plaintiffs claim that the false information induced them into signing Franchise Agreements. (*Id.* ¶ 31.) JMR acquired three territories from MDR by executing three Franchise Agreements between March 11, 2022 and June 19, 2023. (*Id.* ¶¶ 2, 51; Ex. A.) Scale acquired three territories from MDR by executing three Franchise Agreements on July 28, 2022. (*Id.* ¶¶ 3, 52; Ex. B.) MSG acquired five territories from MDR by executing five Franchise

[1] The facts and procedural history are drawn from the Complaint, (ECF 1, "Complaint" or "Compl."), and documents integral to or relied upon by the First Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Agreements on November 9, 2022. (*Id.* ¶¶ 4, 53; Ex. C.) On Top Roofing acquired three territories from MDR by executing three Franchise Agreements on June 19, 2023. (*Id.* ¶¶ 5, 54; Ex. D.)

Relevant here are the Franchise Agreements' forum selection clauses. JMR's Franchise Agreements indicate that the parties agreed to personal jurisdiction in the United States District Court for the Eastern District of Pennsylvania.[2] (Ex. A § 18.4 ("The parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in Bucks County, Pennsylvania and the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania.").) Alternatively, Scale, MSG, and On Top Roofing's Franchise Agreements indicate that the parties agreed to personal jurisdiction in the United States District Court for the District of Nebraska. (Ex. B § 18.4 ("The parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in Douglas County, Nebraska and the jurisdiction and venue of the United States District Court for the District of Nebraska."); Ex. C § 18.4 (same); Ex. D § 18.4 (same).)

Also relevant here are the Franchise Agreements' choice of law provisions, which all provide that Pennsylvania law governs all disputes arising out of the agreements. (*See* Ex. A § 18.1 ("This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without reference to its conflict of laws principals."); Ex. B §

[2] The Court notes that Defendants contend JMR's Franchise Agreements contain a forum selection clause establishing personal jurisdiction in the United States District Court for the District of Nebraska. (*See* Mot. 9.) However, as discussed, the forum selection clause in the agreements establishes personal jurisdiction in the United States District Court for the Eastern District of Pennsylvania. (*See* Ex. A § 18.4; ECF 9-8, Ex. C § 18.4.) Further, in a subsequently filed letter, Defendants clarified that they still seek to transfer the entire case to the District of Nebraska. (*See* ECF 29.) As such, as the parties agree, the Court's analysis does not change. (*See id.*; ECF 30.)

18.1 (same); Ex. C § 18.1 (same); Ex. D § 18.1 (same).)

**1. Procedural History**

Plaintiffs initiated this suit on December 12, 2025, asserting five causes of action: fraudulent and negligent misrepresentation (Counts I-II) and violations of the New Jersey Consumer Fraud Act (Count V) and Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI) against all Defendants, and breaches of contract (Count III) and the implied covenant of good faith and fair dealing (Count IV) against MDR. (*See* Compl. ¶¶ 62-88). Defendants filed the present Motion to Transfer Venue, or in the alternative, Motion to Dismiss, on February 20, 2026. (Mot.) Plaintiffs opposed on March 27, 2026. (Opp.) Defendants filed a reply on April 10, 2026. (Reply.) Defendants also filed a Motion for Leave to File Supplemental Authority in support of their Motion to Dismiss on July 31, 2026. (ECF 26.)

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 1404(a)

"Section 1404(a) permits a district court to transfer a case to any other district court where venue is proper 'for the convenience of the parties and witnesses, in the interest of justice.'" *Samuels v. Medytox Sols., Inc.*, No. 13-7212, 2014 WL 4441943, at *3 (D.N.J. Sept. 8, 2014). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 440 (D.N.J. 2015). "The decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000).

Courts must consider both private and public interests when determining whether to grant a transfer motion under Section 1404(a). The private interests include "(1) plaintiff's forum

preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records." *Humana Inc. v. Merck & Co., Inc.*, No. 23-23023, 2026 WL 96942, at *5 (D.N.J. Jan. 14, 2026) (citing *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998)). The public interests include "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding the local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *See id.*

"The calculus changes, however, when the parties' contract contains a forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). When the parties' contract contains a mandatory forum selection clause, "the plaintiff's choice of forum merits no weight," and the court "deem[s] the private-interest factors to weigh entirely in favor of the preselected forum" and "should not consider arguments about the parties' private interests." *See Humana Inc.*, 2026 WL 96942, at *5 (citing *Atl. Marine Const. Co.*, 571 U.S. at 63-64). While "[n]either the Supreme Court nor the Third Circuit has addressed whether the *Atlantic Marine* analysis applies to a permissive forum selection clause," *see Becton Dickinson & Co. v. Medline Indus., Inc.*, No. 21-12929, 2022 WL 2383722, at *4 (D.N.J. Apr. 28, 2022), this Court tends to apply a traditional Section 1404(a) analysis in such instances, weighing both the private and public interest factors. *See, e.g.*, *Toll Glob. Forwarding SCS (USA), Inc. v. Curtis Int'l*, No. 20-5753, 2021 WL 1702832,

at *3-4 (D.N.J. Jan. 5, 2021); *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 18-10230, 2019 WL 3800234, at *4-7 (D.N.J. Aug. 13, 2019); *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4724625, at *2 (D.N.J. Sept. 23, 2014).

## III. ANALYSIS

### A. The Court Grants Defendants' Motion to Transfer Venue

Defendants argue that this Court should transfer this action to the District of Nebraska because the Franchise Agreements provide for personal jurisdiction in Nebraska and the private and public interest factors favor transfer.[3] (Mot. at 9-10.) With respect to the private interest factors, Defendants assert that the relevant witnesses and core documentary evidence are located in Nebraska, Nebraska is the more convenient forum, the operative facts emanate from Nebraska, Nebraska is better positioned to compel testimony from non-party witnesses, and Plaintiffs have not demonstrate that litigating in Nebraska would impose an undue hardship. (*Id.* at 10-11.) As for the public interest factors, Defendants assert that Nebraska courts are capable of applying the governing law, and that judicial economy and efficiency considerations and the interests of justice weigh in favor of Nebraska. (*Id.* at 11.)

On the other hand, Plaintiffs stress that the forum selection clauses in the Franchise Agreements are permissive and that their forum choice is "a paramount consideration in any determination of a transfer request." (Opp. at 3 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).) Plaintiffs argue that the private and public interest factors weigh in favor of maintaining venue in this Court, noting that all Plaintiffs are based in New Jersey, the allegedly

[3] As discussed, the forum selection clauses in the JMR Franchise Agreements establish personal jurisdiction in the United States District Court for the Eastern District of Pennsylvania. (*See* Ex. A § 18.4; ECF 9-8, Ex. C § 18.4.)

fraudulent representations were directed to New Jersey residents, the damages were incurred in New Jersey, potential damages witnesses are located in New Jersey, Plaintiffs' tort claims are governed by New Jersey law, and the interests of justice favor New Jersey. (*Id.* at 3-4.)

As a preliminary matter, the Court notes that Plaintiffs could have brought suit in Defendants' proposed forum, the United States District Court for the District of Nebraska. *See Becton Dickinson & Co.*, 2022 WL 2383722, at *3 (citing *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010)). Plaintiffs do not argue that the District of Nebraska is an improper forum. (*See* Opp.); *see Becton Dickinson & Co.*, 2022 WL 2383722, at *3 ("Plaintiffs do not argue that the North District of Illinois is an improper forum."). Further, the District of Nebraska would maintain personal jurisdiction over Defendants, rendering it a proper venue. MDR maintains its principal place of business in Nebraska, and Zurek, Skolnick, Schwartz, Ricketts, and Phalen are citizens of Nebraska. (*See* Compl. ¶¶ 6-12); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."); 28 U.S.C. § 1391(b)(1) (stating that a civil action "may be brought in a judicial district in which any defendant resides"); 28 U.S.C. § 1391(c)(2) (explaining that for venue purposes, an entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). Further, while domiciled in Illinois, Hoffman consented to and rendered himself subject to personal jurisdiction in Nebraska by moving to transfer this action to the District of Nebraska. (*See generally* Mot.); *see Real Estate Sol. Today LLC. v. Scifo*, No. 20-4512, 2021 WL 486896, at *7 n.6 (D.N.J. Feb. 10, 2021) (concluding that a defendant consented to the exercise of

personal jurisdiction over him in New York where he moved to transfer the action to New York); *Benson v. Biomet, Inc.*, No. 12-3618, 2012 WL 4442668, at *2 (D.N.J. Sept. 21, 2012) ("Since defendants move to transfer this case to Washington, they have consented to the venue and jurisdiction of that district.").

**1. The Forum Selection Clauses Are Permissive**

In this Circuit, courts "[a]pply[] federal law to questions of enforceability of forum selection clauses," and "apply state contract law to decide interpretation questions." *See Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181-82 (3d Cir. 2017). However, courts have "disagreed on how to classify the question of whether a forum-selection clause is mandatory or permissive," with some finding the "question to be an 'interpretive' issue governed by state law, while others have concluded that it is an 'enforceability' issue governed by federal law." *Grasso Foods, Inc. v. Entex Tech., Inc.*, No. 21-17788, 2022 WL 2046936, at *3 (D.N.J. June 7, 2022). Since this Court frequently "treat[s] the issue as an enforceability issue governed by federal law," it will do so again here. *See, e.g.*, *id.*; *151 Foods, LLC v. Cummings Atlanta LLC*, No. 19-17093, 2021 WL 4077560, at *3 (D.N.J. Sept. 8, 2021); *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 584-85 (D.N.J. 2018).

"A permissive forum selection clause constitutes consent by the parties to jurisdiction in a particular forum, while a mandatory one establishes the particular forum as the exclusive venue for litigating disputes that arise under the contract." *Sahara Sam's Oasis, LLC v. Adams Cos., Inc.*, No. 10-881, 2010 WL 3199886, at *5 (D.N.J. Aug. 12, 2010) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n.7 (3d Cir. 1973)). In addition to language such as "exclusive" or "sole," this Court has also held that "inclusion of the word 'shall' sufficiently evinces a forum selection clause's mandatory nature." *See Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*,

2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (citing cases). On the other hand, "[a] permissive forum selection clause "merely specifies the court empowered to hear litigation and, in effect, allows parties to air any dispute in that court without requiring them to do so." *Id.* (internal quotations omitted).

The forum selection clauses at issue here are permissive. In pertinent part, the clauses provide that "[t]he parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in [Bucks County, Pennsylvania/Douglas County, Nebraska] and the jurisdiction and venue of the [United States District Court for the Eastern District of Pennsylvania/Nebraska] … Franchisee hereby irrevocably consents to the personal jurisdiction of the state and federal courts of [Pennsylvania/Nebraska] as set forth in this section." (*See* Exs. A-D § 18.4.) This Circuit and Court have held that similar clauses are permissive where the word "irrevocably" on its own did not render jurisdiction in the stated forum exclusive. *See Dawes v. Publish America LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014) (noting that the district court erred in concluding that a clause stating that the parties "irrevocably submit to the jurisdiction of any Maryland State or Federal Court …" was mandatory because the clause "did not make jurisdiction in Maryland exclusive"); *Humana Inc.*, 2026 WL 96942, at *7 (concluding that a clause containing the language "hereby irrevocably submit," was permissive because it did not "dictate an exclusive forum for litigation prohibiting litigation elsewhere"); *Kim v. M&T Bank*, No. 17-11810, 2018 WL 4094839, at *5-6 (D.N.J. Aug. 28, 2018) (concluding that a clause stating that the plaintiff "irrevocably submits to the nonexclusive jurisdiction" of New Jersey courts was permissive).

Critically, the clauses here also lack any mandatory or exclusive language, such as "only," "exclusive," "shall," or "must," further indicating their permissive nature. *See Kim*, 2018 WL 4094839, at *6 (finding a clause to be permissive in part because it "d[id] not employ the term

'only,' nor d[id] it use the words 'exclusive,' 'shall,' 'must,' or any other terms that might suggest exclusivity"). *C.f. Gafner v. Oasis Legal Fin., LLC*, 2024 WL 1190741, at *2 (D.N.J. Mar. 19, 2024) (holding that a forum selection clause stating that the parties "irrevocably and unconditionally consent to submit to the ***exclusive*** jurisdiction…" was mandatory) (emphases added).

Finally, forum selection clauses are "prima facie valid, and should be respected unless the resisting party makes a 'strong showing' that the clause is 'unreasonable' under the circumstances." *Cancer Genetics, Inc. v. Kreatech Biotech., B.V.*, No. 07-273, 2007 WL 4365328, at *2 (D.N.J. Dec. 11, 2007). Plaintiffs have not made such a showing, so the Court will respect the clauses. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564-65 (D.N.J. 2000). The Court therefore concludes that the forum selection clauses are permissive and enforceable, and proceeds with a complete transfer analysis under Section 1404(a). *See Becton Dickinson & Co.*, 2022 WL 2383722, at *4.

**2. The Private Interest Factors Favor Transfer**

The private interest factors the Court must consider are "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records." *See Humana Inc.*, 2026 WL 96942, at *5.

The private interest factors weigh in favor of transfer. To start, while Plaintiffs' choice of forum is entitled to deference, the presumption in favor of Plaintiffs' choice is not dispositive. *See Cancer Genetics, Inc.*, 2007 WL 4365328, at *4. "[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely

contractually chosen an appropriate venue." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). "Parties' 'private expression of their venue preferences' in the form of a forum selection clause should also be given 'substantial consideration.'" *Monarch Env't, Inc. v. Velocitor Sol.*, No. 11-3041, 2011 WL 4499270, at *3 (D.N.J. Sept. 27, 2011). While permissive clauses receive less weight than mandatory clauses in the Section 1404(a) analysis, they remain a manifestation of the parties' intent to litigate in the chosen forum and still receive consideration. *See Cancer Genetics, Inc.*, 2007 WL 4365328, at *4; *Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC*, No. 06-3543, 2007 WL 2156367, at *9 (D.N.J. Jul. 25, 2007). As such, "the existence" of three permissive forum selection clauses establishing personal jurisdiction in the District of Nebraska aligns with Defendants' choice of forum and "weighs in favor of transfer" with respect to Plaintiffs MSG, Scale, and On Top Roofing. (Exs. B-D § 18.4); *Cancer Genetics, Inc.*, 2007 WL 4365328, at *4; *Monarch Env't, Inc.*, 2011 WL 4499270, at *3-4; *Ethicon, Inc. v. Randall*, No. 20-13524, 2021 WL 2206106, at *11 (D.N.J. May 28, 2021). The Court notes that Plaintiff JMR's Franchise Agreement establishes personal jurisdiction in the Eastern District of Pennsylvania. (Ex. A § 18.4.) Since neither party seeks to transfer this case to the Eastern District of Pennsylvania, the Court deems this fact neutral. *See Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 467 (E.D. P.a. 2013) (concluding that there was a "strong indication that Washington [wa]s not the preferred venue for either party" where neither party "moved to enforce the Washington forum selection clause").

The Court next considers where the claim arose, which is neutral here. "In contract actions, 'the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Rosen v. Lieberman*, No. 16-7341, 2018 WL 11712117, at *5 (D.N.J. Oct. 18, 2018). "For claims of

fraud or misrepresentation, District Courts within this District have focused on where the alleged misrepresentations were made." *Id.* While the record does not specifically establish where the Franchise Agreements were negotiated or executed, it indicates that Defendants MDR, Zurek, Skolnick, Schwartz, Ricketts and Phalen were based in Nebraska, Defendant Hoffman was based in Illinois, and Plaintiffs were based in New Jersey. (Compl. ¶¶ 2-12.) Further, while the record makes clear that the Franchise Agreements were related to Mighty Dog Roofing franchises in New Jersey, (*id.*), it does not reflect that Defendants were based in or working out of New Jersey when they made the alleged fraudulent misrepresentations or engaged in breach of contract. (*Id.* ¶¶ 28-61.) It could be that the negotiations, executions, and alleged breaches took place over electronic or telephonic communications, and this Court has repeatedly concluded that "electronic and telephonic negotiations between two districts do not necessarily create a substantial event that establishes proper venue in one district over the other." *See Rosen*, 2018 WL 11712117, at *6 (internal quotations omitted); *Humana Inc.*, 2026 WL 96942, at *8; *Lorven Tech., Inc. v. Insight Tech., Inc.*, No. 16-7397, 2017 WL 2670971, at *4 (D.N.J. Jun. 21, 2017) (quoting *Stalwart Capital LLC v. Warren St. Partners, LLC*, No. 11-5249, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012)).

The convenience of the parties, witnesses, and the location of books and records factors are also neutral. While Defendants are based in Nebraska and Illinois, Plaintiffs are based in New Jersey. (*See* Compl. ¶¶ 2-12); *Butz v. Schleig*, No. 09-761, 2009 WL 971410, at *6 (D.N.J. Apr. 7, 2009) (finding that convenience of the parties was a neutral factor where "[r]egardless of where the litigation occurs, at least one party will be forced to litigate away from home"). Further, while Plaintiffs allege they have been "financially devastated" by Defendants' actions in their opposition brief, they present no evidence in support of this claim. (*See* Opp. at 4.) Plaintiffs merely point to

the fact that they took out a Small Business Administration loan to proceed under the Franchise Agreements, but this fact does not establish that they are financially incapable of pursuing this litigation in Nebraska. (*See id.*; Compl. ¶ 50); *Denmark v. Pilot Travel Ctrs., LLC*, No. 18-15028, 2019 WL 2353644, at *5 (D.N.J. June 4, 2019) (finding this factor to be neutral because plaintiffs did not "represent that they [we]re financially incapable of incurring any potential cost increase" related to litigating in the alternative forum).

The convenience of the witnesses factor is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *See Jumara*, 55 F.3d at 880. However, neither Plaintiffs nor Defendants assert that any witnesses would be unable to travel to an alternative forum, rendering this factor neutral. (Mot. at 10; Opp. at 4); *see Schleig*, 2009 WL 971410, at *6 (holding that the convenience of the witnesses factor was neutral where "neither party ha[d] shown that their witnesses w[ould] be unable or unwilling to attend trial in an alternative forum"). Relatedly, courts only consider the location of books and records factor to the extent that the parties contend the books and records cannot be produced in an alternative forum. *See Jumara*, 55 F.3d at 879. And here, neither party has indicated that the relevant books and records would not be available in the alternative forum. *See Schleig*, 2009 WL 971410, at *6 (finding the books and record factor to be neutral where neither party indicated that they would be "unable to produce their files in the alternative forum"); *Ethicon, Inc.*, 2021 WL 2206106, at *14 (same). In short, while many of the private interest factors are neutral, they ultimately weigh in favor of transfer when considering the permissive forum selection clauses establishing personal jurisdiction in the District of Nebraska.

**3. The Public Interest Factors Favor Transfer**

The public interest factors also weigh in favor of transfer. These factors include "(1) the

enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding the local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *See Humana, Inc.*, 2026 WL 96942, at *5.

The enforceability of the judgment factor favors transfer. This factor "concerns whether a judgment is *capable* of being enforced at all." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 406, n.10 (3d Cir. 2017) (emphasis in original). It is true that ultimate judgments are generally enforceable in both offered fora and "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *See id.* at 410; *Schleig*, 2009 WL 971410, at *7. "However, a party may obtain relief from a final judgment under Federal Rule of Civil Procedure 60(b)(4) 'if the court that rendered [the judgment] lacked personal jurisdiction over the defendant.'" *Zangara v. Nat'l Bd. of Med. Exam'rs*, No. 22-1559, 2023 WL 6533467, at *6 (D.N.J. Oct. 6, 2023) (quoting *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008)). While the contested forums are both federal district courts, this Court's personal jurisdiction over Defendants Hoffman, Zurek, Skolnick, Schwartz, Ricketts, and Phalen is disputed and tenuous. (Mot. at 13-14.) Defendant Hoffman is a citizen of Illinois, and Defendants Zurek, Skolnick, Schwartz, Ricketts, and Phalen are citizens of Nebraska. (Compl. ¶¶ 7-12, 15.) Further, not only does the record lack evidence that the relevant Defendants purposefully directed conduct at New Jersey, but they each submitted certifications stating that they did not. (*See id.* ¶¶ 28-61; ECF 9-5.) If this Court lacks jurisdiction over the listed Defendants, it also lacks authority to enforce a judgment against them. *See Budget Blinds, Inc.*, 536 F.3d at 258; Fed. R. Civ. Pro. 60(b)(4). "Accordingly, this factor favors transfer." *Zangara*,

2023 WL 6533467, at *6.

Second, practical considerations also favor transfer. It is true that "[b]oth parties have witnesses and records located in their home states," ensuring that "at least one party will have to transport witnesses and records from one forum to another." *Schleig*, 2009 WL 971410, at *7; *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008) ("[T]he likelihood that parties, documents, and witnesses will have to be transported from one forum to another regardless of where this case is litigated means that 'practical considerations that could make the trial easy, expeditious, or inexpensive' do not favor either forum."). However, as discussed, there is a merited dispute over whether this Court has personal jurisdiction over Defendants Hoffman, Zurek, Skolnick, Schwartz, Ricketts, and Phalen. And courts within this Circuit have held that "where there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could clearly have been brought." *Amtrust at Lloyd's Ltd. v. Breslin*, No. 14-7761, 2015 WL 1399588, at *4 (D.N.J. Mar. 26, 2015) (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981)); *Beauty Plus Trading Co., Inc. v. I & I Hair Corp.*, No. 20-9268, 2020 WL 6156285, at *4 (D.N.J. Oct. 21, 2020) ("[T]he interests of justice are furthered by transfer of the action pursuant to 28 U.S.C. § 1404(a) to the other proper venue in which personal jurisdiction clearly exists."); *Zangara*, 2023 WL 6533467, at *6-7 (concluding the practical considerations weigh in favor of transfer where personal jurisdiction is seriously disputed); *Interlink Prod. Int'l, Inc. v. Crowfoot*, No. 20-7654, 2020 WL 6707946, at *8–9 (D.N.J. Nov. 16, 2020) ("Transfer … obviates the need for the parties and the Court to expend limited resources on jurisdictional preliminaries."). This Court has already confirmed that the District of Nebraska maintains personal jurisdiction over Defendants. *See supra*

Part III(A). As such, this factor weighs in favor of transfer.

Third, the factor related to administrative difficulty and court congestion favors transfer. Courts are "required to evaluate this factor in light of the relative docket congestion of the fora." *Hytera Commc'n Corp. v. Motorola Sols., Inc.*, No. 17-12445, 2018 WL 7108018, at *11 (D.N.J. Dec. 6, 2018). "To demonstrate congestion, a moving party will typically cite to management statistics demonstrating the difference in congestion between the two districts." *Humana, Inc.*, 2026 WL 96942, at *10. Here, Defendants cite statistics indicating that, as of December 31, 2025, the District of New Jersey had sixty-three times more pending cases than the District of Nebraska. (Mot. at 11.) This factor thus weighs in favor of transfer to the District of Nebraska. *See Ethicon, Inc.*, 2021 WL 2206106, at *15 (finding the congestion factor favors transfer where data indicated the number of filings and pending cases was much higher in New Jersey than in Massachusetts).

Fourth, the local interest factor is neutral. "Typically, when a substantial amount of the alleged culpable conduct occur[s] in the chosen forum, that court favors retaining jurisdiction as a matter of local interest." *Cancer Genetics, Inc.*, 2007 WL 4365328, at *6. But as discussed, the record here does not indicate that Defendants engaged in any of the alleged conduct in New Jersey, or that Plaintiffs engaged in any relevant conduct in Nebraska. (*See* Compl. ¶¶ 28-61); *Yocham*, 565 F. Supp. 2d at 559 (concluding that the local interest factor did not tip the scale where "both fora have ties to the facts at issue"). The fifth public policy factor is also neutral, as neither party has "argued that public policy concerns favor one forum over the other." *See Gourmet Video, Inc.*, 2008 WL 4755350, at *8.

The sixth factor slightly favors Plaintiffs. "The focus of this factor is whether judges in one of the districts would have greater familiarity with the applicable state law, particularly in diversity cases." *Jumara*, 55 F.3d at 879. The Franchise Agreements contain a choice of law

provision stating that Pennsylvania law governs all disputes arising out of the agreements, such as Plaintiffs' breach of contract and implied covenant of good faith and fair dealing claims. (*See* Compl. ¶¶ 75-83; Exs. A-D § 18.1.) Thus, if this case were to be transferred to Nebraska, the same Pennsylvania choice of law rule would apply to these claims. *See Humana, Inc.*, 2026 WL 96942, at *11. However, Plaintiffs also bring various tort claims and a claim under the New Jersey Consumer Fraud Act, which are governed by New Jersey law. (Compl. ¶¶ 62-74, 84-88.) Judges in the District of New Jersey would have greater familiarity with the applicable law with respect to those claims. This factor thus favors Plaintiffs with respect to those claims.

All in all, the public interest factors weigh in favor of transferring this case to the District of Nebraska.

## IV. CONCLUSION

Since both the private and public interest factors weigh in favor of transfer, this Court **GRANTS** Defendants' Motion to Transfer Venue to the United States District Court for the District of Nebraska. Accordingly, Defendants' Motion to Dismiss and Motion for Leave to File Supplemental Authority are **DISMISSED** as moot. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Michael A. Hammer, U.S.M.J.
Parties